IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICTOR ERNESTO CABALLERO, | ) | |
| ID# 1154820 | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:08-CV-0973-M (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3-251, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

## I.  BACKGROUND

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2254. Respondent is Nathaniel Quarterman, Director of the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ-CID).[1]

A.   **Factual and Procedural History**

The State indicted petitioner for the aggravated assaults with a deadly weapon of Martha Caballero and Juan Zamarripa on or about March 16, 2002.  (State Habeas Trancript[F02-49134-I]:50; S.H.Tr.[F02-01705-I]:51).  The State also indicted petitioner for the aggravated kidnapping of Martha Caballero on March 18, 2002. (S.H.Tr.[F02-49133-I]:55).  After petitioner pled not guilty to the charged offenses and waived his right to a jury trial, he was tried before the court and was

---

[1]  Petitioner originally listed the former Director as the respondent in his petition and "challenges" the alleged substitution of party by respondent as affecting his substantial rights.  (Mem. at 4.)  By notice of deficiency and order dated June 12, 2008 (doc. 5 at n. 1), the Court substituted the current Director as respondent because, as petitioner acknowledges, he had custody of petitioner at the time the petition was filed.  This routine substitution by the Court has no effect on petitioner's substantial rights.

found guilty of all three offenses on February 6, 2003. (R. 2:6-7, 139). On that same date, after a punishment hearing, the trial court sentenced him to twenty years for each of the aggravated assaults and twenty-five years for the aggravated kidnapping. (R. 3:38).

On direct appeal, petitioner alleged that the evidence was legally and factually insufficient to support each of the three convictions. The state appellate court recounted the evidence presented at trial as follows:

> Appellant's former wife Martha Caballero testified that appellant entered her home and put a gun to her head in front of her sister, her friend, and her boyfriend Juan Zamarippa, who were all sitting on the living room sofa. Caballero was afraid appellant was going to kill her. When Zamarippa tried to assist her, he and appellant began to struggle. They moved into Caballero's daughter's room, and appellant shot Zamarippa in the stomach and the face while Caballero hid behind a door. Appellant then fled, and Zamarippa was taken in an ambulance to a hospital.

> Two days later, appellant called Caballero's cell phone while she was shopping at a Wal-Mart store with her sister, son, and daughter. He told her he knew she was there and was going to kill her. Concerned for her safety, Caballero called the police. Officers arrived at the store and told Caballero to go home, but she instead went back into the store, telling her sister to call the police again if she saw appellant get near her. In the store, appellant confronted Caballero. At that time, Caballero's sister and daughter ran to get the police.

> Meanwhile, appellant showed Caballero he had a gun in his jacket and forced her to buy bullets for him in the sporting goods section of the store because he did not have identification to buy the bullets himself. As appellant was guiding Caballero to an exit while holding his young son's hand, police officers confronted him. According to the arresting officer, appellant was "pulling on [Caballero's] arm and trying to walk backwards with her." He gave the officer a look "like oh, I'm caught," then tried to run. Eventually, the officer arrested appellant. When the officer searched appellant's jacket pockets, he found a twenty-five caliber pistol with one round in it and a box of twenty-five caliber bullets with two bullets missing.

> Appellant testified in his defense. He claimed Zamarippa was a dangerous man who had threatened to kill him and had shot at him just three weeks before the shooting at Caballero's home. According to appellant, he shot Zamarippa in self-defense. Appellant explained that he had gone to Caballero's home merely to pick up some CDs he had left in his daughter's room. He claimed that when he went to his daughter's room to get the CDs, Zamarippa jumped out of the daughter's closet and started punching him. Appellant claimed he shot in a panic because he feared

2

Zamarippa would kill him. Appellant also asserted that he never put a gun to Caballero's head.

Afterward, according to appellant, he was lured to the Wal-Mart by Caballero, who called him on the phone to warn him that Zamarippa's relatives intended to kill him. Appellant carried a gun into the store because he was concerned that Zamarippa's relatives were going to hurt him. He claimed that both his son and daughter were glad to see him at the store. He also claimed that his wife voluntarily bought him bullets for his gun. According to appellant, he did not force Caballero to do anything in the Wal-Mart. He admitted he had previously pleaded no contest to assaulting Caballero in 1995.

Caballero testified that Zamarippa did not have the reputation of being a violent man. Caballero's sister was in Mexico at the time of appellant's trial. Caballero was unsure where Zamarippa was, but the last time she had heard from him he was in jail in Tennessee.

*Caballero v. State*, Nos. 05-03-00458-CR, 05-03-00459-CR, 05-03-00460-CR, slip op. at 1-3 (Tex. App. – Dallas, Feb. 4, 2004, pet ref'd). Petitioner's three convictions were affirmed on appeal and his petition for discretionary review was refused. *Id.*

Petitioner filed state habeas applications in each of the three cases on February 15, 2005. (S.H.Tr.[W02-49134-I(A)]:2; S.H.Tr.[W02-01705-I(A)]:2; S.H.Tr.[W02-49133-I(A)]:2). After initial findings were filed by the trial court recommending that relief be denied based on an affidavit from petitioner's trial counsel (*Id*. at 44-49; *Id*. at 45-50; *Id*. at 50-54), the Court of Criminal Appeals remanded the cases to the trial court and ordered the trial court to obtain additional affidavits and conduct a hearing, if necessary, on April 4, 2007. *Ex parte Caballero*, Nos. WR-66,812-01, WR-66,812-02, WR-66,812-03, slip op. at 2-3 (Tex. Crim. App. April 4, 2007). The trial court conducted an evidentiary hearing, obtained two additional affidavits, and made additional findings recommending denial in each of the three cases. (S.H.Tr.Supp.[W02-49134-I(A)]:2-10; S.H.Tr.Supp.[W02-01705-I(A)]:2-10; S.H.Tr.Supp.[W02-49133-I(A)]:2-10; R.[11/8/06 hearing]:4-28). The Court of Criminal Appeals denied relief in Cause No. W02-01705-I(A) (trial cause no.

F02-01705-I, aggravated assault of Juan Zamarippa) and Cause No W02-49133-I(A) (trial cause no. F02-49133-I, aggravated kidnapping of Martha Caballero) on September 12, 2007, on the basis of the findings without a written order. (S.H.Tr.Supp.[W02-01705-I(A)]:cover; S.H.Tr.Supp.[W02-49133-I(A)]:cover). The Court of Criminal Appeals granted relief in Cause No. W02-49134-I(A) (trial cause no. F02-49134-I(A), aggravated assault of Martha Caballero) on the basis of the trial court's findings by way of an unpublished opinion and remanded the case to the trial court with the order that petitioner's plea be withdrawn, so that petitioner could be offered a plea bargain for a five-year sentence in the one aggravated assault case. *Ex parte Caballero*, No. AP-75,763, slip op. at 2 (Tex. Crim. App. Sept. 12, 2007). According to a docket sheet submitted by respondent, petitioner refused this plea bargain on October 31, 2007. *See* Resp. Ex. B.

On June 2, 2008, petitioner filed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system). Respondent filed a response on October 23, 2008, alleging that some of petitioner's claims are unexhausted and procedurally barred, and that all of his claims are without merit, and provided the state court records.[2] Petitioner filed a reply brief on November 7, 2008.

**B.    Substantive Issues**

In the body of his federal petition, petitioner claims that his trial counsel was ineffective by failing to inform petitioner of a plea bargain offer of five years' imprisonment. In his memorandum in support of his petitioner for writ of habeas corpus, petitioner also contends that:

the State waived its arguments at the state level because the affidavits did not include

---

[2] Because respondent does not allege that petitioner's case is time-barred, petitioner's assertion that he is entitled to equitable tolling need not be addressed.

the correct cause numbers (Memo at 8);

the findings made by the state district judge at the state habeas level modified petitioner's sentence in the aggravated kidnapping case from a five-year sentence to a twenty-five year sentence under a different cause number, the judge had a conflict of interest in the case, and he improperly admitted evidence (Memo at 10-13); and

his conviction for aggravated kidnapping was an illegal sentence under *Apprendi* because the indictment did not state that he was indicted for aggravated kidnapping and failed to prove this beyond a reasonable doubt (Memo at 14-15).

## II.  EXHAUSTION OF STATE REMEDIES

Respondent contends that petitioner has failed to exhaust the claims he raises in his memorandum because he failed to raise them at the state level either on direct appeal or in a state habeas application.

A petitioner must fully exhaust state remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b).  To exhaust in accordance with § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court.  *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus.  *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432.  It is well-settled that federal courts can dismiss without prejudice a federal petition for writ of habeas corpus that contains unexhausted grounds for relief.  *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990).  As a matter of comity, the state courts must be given a fair opportunity to hear and consider the claims raised by an applicant before those claims are heard in federal court.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).

In this case, the Court finds that the administration of justice would be better served by bypassing the procedural issue and reaching the merits of the claim. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).[3]

## III.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits[4] in State court pro-

---

[3] Respondent also asserts that these grounds are procedurally barred because they would be dismissed at the state level, should this Court dismiss the petition, since petitioner could have but failed to raise them at the state level.  Because this Court has elected to deny the unexhausted claims on their merits, as permitted under federal law, it declines to apply a procedural bar.

[4] "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  Here, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ.

ceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.'"  *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The

resolution of factual issues by the state court is presumptively correct and will not be disturbed

unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. §

2254(e)(1).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first ground for relief, petitioner asserts that his trial counsel provided ineffective

assistance of counsel because he did not communicate a plea offer that the State made in petitioner's

cases.  Specifically, petitioner points to a "pass slip" in the trial court's files indicating that the case

would be passed to September 30, 2002, for a trial before the judge ("TBJ").  Under the heading

"plea bargain data," the notations "5 years TDC" and a "$5000 fine" are written.  The pass slip also

has signatures on the lines for the assistant district attorney and defense counsel and states that the

defendant is in jail. (Pet. Ex. A).  Under the heading for cause numbers, four cause numbers are

listed, including the three for which petitioner was convicted as well as a fourth charge for

aggravated assault (F02-71824) that was dismissed by the State after petitioner's conviction in the

other three cases.  (*See* Resp. Ex. A [motion to dismiss prosecution signed by trial judge]).

To successfully state a claim of ineffective assistance of counsel under Supreme Court prece-

dent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the defi-

cient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

A failure to establish either prong of this test requires a finding that counsel's performance was

constitutionally effective.  *Id.* at 696.  The Court may address the prongs in any order.  *Smith v.*

*Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."

8

*Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.  Petitioners must "affirmatively prove prejudice."  *Id.* at 693.  They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations, furthermore, are insufficient to obtain habeas relief.  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

During the state habeas proceedings, petitioner's trial attorney and two assistant district attorneys submitted affidavits to the trial court, and counsel also testified at an evidentiary hearing.  Petitioner's trial attorney's affidavit states that in the weeks before petitioner's trial, one of the Assistant District Attorneys offered petitioner twenty-five years, counsel presented the offer to petitioner, and petitioner refused it.  It also states that the State made no other plea bargain offer and never made an offer of five years.  As for the pass slip, to the best of counsel's recollection, this offer was never conveyed to him, but he would have advised petitioner of the offer and advised him to take it if it had been presented.  (S.H.Tr.[W02-49134-I(A)]:42).

9

After the Court of Criminal Appeals remanded the case, counsel testified at the evidentiary hearing that he had reviewed the pass slip in one of the court's files and that the defense attorney's signature is that of an attorney who was working for counsel at the time he represented petitioner. (R.[11/8/06 hearing]:5-6).  Counsel further testified that he never saw the pass slip and was never told of such an offer. *Id.* at 6.  From his consultations with the assistant district attorney on the case, his understanding was that five years would have never been offered because of the number of cases involved.  The plea recommendation prior to trial was twenty or twenty-five years. *Id*. at 6-7. Counsel further testified that he would have advised petitioner to take a five-year plea offer because five years would have been the minimum sentence for the aggravated kidnapping case and close to the minimum on the two aggravated assault cases. *Id.* at 27.

The former assistant district attorney on the case also submitted an affidavit during the state habeas proceedings stating that she had no personal recollection of the cases against petitioner or any plea negotiations.  Her affidavit states that the assistant's signature on the pass slip was hers, but the handwriting on the remainder of the pass slip was not hers.  Based on her experience and knowledge, she would not have made a five-year offer on causes involving aggravated kidnapping, aggravated assault, and retaliation. (S.H.Tr.Supp.[W02-49134-I(A)]:7).  Another assistant district attorney submitted an affidavit to the state habeas court stating that she worked on non-capital writs for the office and that she reviewed the district attorney's files in these cases.  She looked for any reference to a plea bargain offer of five years and found a notation on the inside cover of the file in Cause No. F02-49134-I which states "5 TDC" without any explanation. *Id*. at 8.  She also attached a copy of the inside cover of the file.  Aside from the notation, the inside cover contains what appears to be notes written by a prosecutor concerning conversations with police officers and the complaining witness (CW) about the case. *Id*. at 10.

10

The trial court made factual findings based on the affidavits and live testimony. The trial court found that the assistant district attorneys were credible, that counsel's associate could not be located through any telephone numbers that had been obtained by the court, and that the assistant district attorney and defense counsel both agreed that it was unlikely that a five-year offer was ever made. (S.H.Tr.Supp.[W02-49134-I(A)]:3-4).   In cause number F02-49134-I, the trial court concluded that petitioner had established that a five-year offer had been made and that trial counsel was ineffective in communicating the offer to petitioner, and it recommended that relief be granted. (*Id*. at 4-5).   In cause numbers F02-01705-I(A) and F02-49133-I(A), the trial court made the same factual findings but concluded that petitioner had failed to establish that a five-year offer was made in those cases and that counsel was not ineffective, and it recommended that relief be denied. (S.H.Tr.Supp.[W02-01705-I(A)]:4-5; S.H.Tr.Supp.[W02-49133-I(A)]:4-5). Based on these findings, the Court of Criminal Appeals granted relief in cause number F02-49134-I, the aggravated assault of Martha Caballero, and denied relief in the other two cases.

Petitioner contends that relief should have been granted in all three cases, but he has not rebutted the presumption that the trial court's findings are correct by clear and convincing evidence. Moreover, under § 2254(d)(2), petitioner has not shown that the state court's decisions in these cases were based on an unreasonable determination of the facts in light of the evidence presented in the state court.   Implicitly, petitioner is arguing that the state court should have found that he was offered a five-year plea bargain in all four cases then pending against him based on the evidence, including the pass slip.   However, the trial court had before it testimony from the lead defense attorney that he was never told of a five-year offer, either  from the assistant district attorney or the attorney who worked for him.   It also had an affidavit from the assistant district attorney stating that although her signature was on the pass slip, the other handwriting on the pass slip was not hers, and

that based on her experience and knowledge, she would not have made such an offer in these cases. Furthermore, the trial court found that the defense attorney whose name is on the pass slip could not be located.  The trial court therefore had no direct evidence before it that any assistant district attorney made a five-year plea bargain offer to a defense attorney representing petitioner. Nonetheless, the state court appears to have, in an abundance of caution, granted petitioner relief in the one aggravated assault case because the phrase "5 TDC" was found inside the district attorney's case file in that case.  As for petitioner's other two cases, there was no direct evidence before the state court that such an offer was made in those two cases, and the state court's decisions denying relief in these cases were therefore not based on an unreasonable determination of the facts in light of the evidence presented in the state court.  Trial counsel was not ineffective for failing to communicate a plea bargain offer in the two other cases without evidence that such an offer was made.  This ground for relief is without merit, and should be denied.

## V.  STATE'S WAIVER

Petitioner also asserts that the State has waived any objection to the plea agreement because the affidavits submitted at the state court level address Cause Nos. F02-01705, F02-49133, F02-49134, rather than Cause Nos. F02-49133, F02-49134, and F02-71824. (Memo at 8).[5]  Petitioner contends that the State has abandoned its argument that its agents have no recollection of any plea negotiations in these cases because the wrong numbers are cited in the affidavits.

As noted earlier, cause number F02-71824 was an aggravated assault case that the State requested be dismissed after petitioner was convicted on the other three cases, and this motion was granted by the trial court. (Resp. Ex. A).  Therefore, any federal habeas claim with respect to this

---

[5]  However, later on that same page, petitioner asserts the opposite--that the affidavits address F02-71824, along with the other two cases, rather than F02-01705. (Memo at 10).

case would be moot because petitioner was never convicted of this crime.  Moreover, the record reflects that all of the affidavits submitted at the state level cite to the correct three cause numbers under which petitioner was convicted: F02-01705, F02-49133, and F02-49134 (S.H.Tr.Supp.[W02-01705-I(A)]:7, 8), except for the affidavit from trial counsel that refers to  five cause numbers for which petitioner was initially indicted. (S.H.Tr.[W02-01705-I(A)]:43).[6]  More importantly, the trial court's findings address the correct cause numbers.  The State has waived no argument, and this claim is without merit and should be denied.

## VI.  STATE HABEAS PROCEEDINGS

Petitioner further asserts that the state trial judge who addressed his state habeas application, through his findings of fact, modified petitioner's plea agreement from a five-year sentence for aggravated kidnapping in Cause No. F02-71824 to a twenty-five year sentence in Cause No. F02-01705. (Memo at 2).  Petitioner further asserts that the judge had a conflict of interest in the case and that he improperly attempted to enter evidence into the record with respect to one of the grounds petitioner raised at that level. (Memo at 11-13).[7]

Petitioner presents no evidence to support these assertions, other than his assertion that two affidavits were improperly entered into the record.  As noted earlier, Cause No. F02-71824 was an aggravated assault case that was dismissed by the State.  It was not addressed by the state habeas court in its findings.  As for petitioner's assertions that the state habeas judge had a conflict of interest in the case and improperly entered into evidence two affidavits from two assistant district

---

[6]  The Dallas County on-line criminal record database indicates that the State also dismissed Cause No. F02-71611, a retaliation case. *See* http://www.dallascounty.org/criminalBackgroundSearch. (search for petitioner, Cause No. F02-71611).

[7]  Petitioner appears to raise this argument in response to the respondent's assertion of procedural bar.  (Memo at 10-13).  As noted, the Court declines to apply the bar but will nevertheless address the argument on the merits.

attorneys, the two affidavits were obtained because the Court of Criminal Appeals ordered the state habeas court to gather further evidence regarding the issue of a possible plea bargain. *See Ex parte Caballero*, Nos. WR-66,812-01, WR-66,812-02, WR-66,812-03, slip op. at 2-3 (Tex. Crim. App. April 4, 2007).

Furthermore, this Court cannot grant habeas corpus relief "to correct alleged errors in state habeas proceedings." *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors). "[E]rrors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief." *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999). Such errors necessarily fail "because infirmities in state habeas proceedings do not constitute grounds for relief in federal court." *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997).

Petitioner is not entitled to relief on the basis of these claims.

## VII.  APPRENDI CLAIM

Finally, petitioner asserts that his twenty-five year sentence in the aggravated kidnapping case violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the indictment did not state that he was being charged with aggravated kidnapping, the penalty was enhanced, and the elements were not proven to a jury beyond a reasonable doubt. (Memo at 14). The indictment charged petitioner with "unknowingly, intentionally, and knowingly" abducting Martha Caballero by restraining her, by confining her and by moving her from one place to another and by secreting and holding her in a place where she was not likely to be found. The indictment also charged that petitioner threatened deadly force and "did intentionally and knowingly use a exhibit a deadly weapon," that being a firearm, during the commission of this offense. (S.H.Tr.[W02-49133-I(A)]:55).

The sufficiency of a state indictment is not a matter for habeas relief unless the indictment

is so defective that it deprives the state court of its jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994).  Petitioner has failed to allege that this indictment deprived the state court of jurisdiction over this cause, and there is no evidence that it did.  Although he appears to complain that the words "aggravated kidnapping" were not used in the supporting affidavit, the affidavit tracked the language of the applicable state statute that a kidnapping is aggravated if a person uses or exhibits a deadly weapon during the commission of the offense.  *See* TEX. PENAL CODE ANN. § 20.04(b) (Vernon 2001).  Petitioner also claims that under *Apprendi*, the elements had to be proven beyond a doubt to a jury.  He waived his right to a jury trial (R. 2:6), however, and he expressed to his attorney that he was concerned that a jury would be unsympathetic to him.  (S.H.Tr.[W02-49134-I(A)]:42).  The appellate court also determined on direct appeal that the elements had been proven beyond a reasonable doubt.

Petitioner is not entitled to relief on the basis of this claim, and it should be denied.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 7th day of July, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE